# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff<br><br>vs.<br><br>INTERSTATE NATIONAL DEALER SERVICES, INC., N.C.W.C., INC. D/B/A DEALER SERVICES, and ALL AMERICAN AUTO PROTECTION, INC.<br><br>      Defendants. | Case No. 14-cv-01846-ELR<br><br>CLASS ACTION |

## PLAINTIFF'S FOURTH MOTION TO COMPEL DISCOVERY RESPONSES OF INTERSTATE NATIONAL DEALER SERVICES, INC.

This Court has previously held that sellers of goods or services can be compelled to obtain telemarketing call records and other documents related to those telemarketing campaigns from third parties that it has a relationship with if the calls are made relate to the claims of this lawsuit. *See* Doc. No. 82 (Compelling co-defendant N.C.W.C., Inc. to obtain telemarketing campaign records from a third

party vendor)[1]. In that same holding, this Court found that financial information regarding the relationship between a defendant and a third party that made telemarketing calls to putative class members is relevant to a finding if the defendant can be held vicariously liable for the actions of that party. *See* Doc. No. 82 (Compelling defendant Interstate National Dealer Services, Inc., ["Interstate"] to provide financial information related to the co-defendants, who are alleged to have physically called Ms. Mey).

After receiving these discovery directives, Ms. Mey proceeded with discovery and her efforts to identify putative class members and develop vicarious liability efforts related to the putative class claims, including serving her Fourth Set of Discovery on Interstate, which will identify putative class members (and any asserted defenses) called by entities Interstate hired that Interstate has received telemarketing complaints about, as well as receive financial information related to those specific entities. In a response, which is attached as Exhibit 1, Interstate claims that they are not in physical possession of the telemarketing records, and also claims that financial information related to the other third parties, one of which physically called Ms. Mey, is not discoverable. For the reasons and those set forth more fully below, Plaintiff's Motion should be granted.

---

[1] N.C.W.C., Inc. has filed an action in Florida seeking those records. *See N.C.W.C., Inc. v. Call Center Consultants, LLC*, United States District Court for the Southern District of Florida, West Palm Beach Division, Civil Action No. 15-MC-80372.

## I. **BACKGROUND**

As this is the fourth time Interstate has failed to provide adequate discovery responses, the history of this litigation and the Plaintiff's allegations and discovery efforts have been recounted at length. As such, the Plaintiff will attempt to limit the status of the law and litigation history to those facts that are germane to this motion.

In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones. The TCPA categorically bans persons and entities from initiating telephone calls using an automated telephone dialing system ("ATDS") to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

In addition, the National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers, be they live solicitations or computer generated. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry

"must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

Further, a telemarketer who contends they had consent to contact a consumer bears the burden of proof. As the FCC has recognized in the context of the TCPA:

> In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 03-153 at ¶46; 2003 FCC LEXIS 3673 (July 3, 2003). In fact, Interstate specifically raised consent as an affirmative defense in this case:

> **THIRD AFFIRMATIVE DEFENSE**
>
> Plaintiff and some or all of the putative class members may have provided prior express consent to receive the alleged calls, either directly or indirectly, and therefore there is no liability under the TCPA for such calls.

*See* Doc. No. 29 at 10.

Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Sections 227(b) and 227(c), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. filed by Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling"). A seller is liable under Sections 227(b) and (c) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47. Additionally, a seller may be vicariously liable for violations of those provisions under principles of apparent authority and ratification.

Plaintiff Diana Mey is one of many American cellular phone users pestered by automated and unsolicited telemarketing calls despite having registered her phone number on the Registry. Ms. Mey alleges in her complaint that she received, on her cell phone the number of which was listed on the Registry, automated telemarketing calls from AAAP and other dealers of Interstate seeking to promote the goods and services of Interstate. *See* Complaint (Doc No. 1) at ¶¶2, 25-37 and 38-48. In Ms. Mey's initial disclosures, she also disclosed that she received a similar telemarketing call from US Direct Protect, the day she filed her Complaint. Ms. Mey further alleges in the Complaint that she never consented to receive these calls, and they were placed to her for no legitimate purpose. *Id.* at ¶3. Ms. Mey further alleges that AAAP and other third parties like US Direct Protect were

authorized to telemarket on behalf of Interstate, and contend that Interstate is liable for telemarketing conducted by Dealer Services or AAAP that was in violation of applicable telemarketing law. *Id.* at ¶22-24; ¶49-53. Because the calls were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Ms. Mey brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Interstate. *Id. at* ¶4.

Throughout the course of discovery, Plaintiff has obtained documents that confirmed that during the time period of the calls to the Plaintiff, Interstate had a contractual relationship with US Direct Protect and AAAP that allowed them to solicit business on behalf of Interstate. The Plaintiff has also obtained documents from the defendants in this action that explain the nature of the relationship that continued for a number of years after those contracts were signed, including documents that acknowledged those parties would be telemarketing.

The Plaintiff has also issued approximately 20 third party subpoenas, designed to both identify class members and further develop her theories of vicarious liability with respect to Interstate. In response to two of these subpoenas, the Plaintiff has obtained records of more than 3,000,000 attempted telephone calls

6

by AAAP and US Direct Protect, including contact made with the Plaintiff. It is with these records, as well as the telemarketing record information requested in these discovery requests that the Plaintiff will use to identify putative class members.

## II.     LR 37.1 AND FED.R.CIV.P. 37(a)(2)(A)(B) CERTIFICATION

On February 26, 2015, the Plaintiff served her Fourth Set of Discovery on Interstate. Interstate served responses and objections to the Plaintiff's requests that are attached as <u>Exhibit 1</u> on April 3, 2015, following a one week extension from the Plaintiff. In response to the requests propounded by the Plaintiff, no documents were produced. On April 10, 2015, the parties had a meet and confer conference, but no agreement was reached[2], and Court intervention is necessary.

Pursuant to LR 37.1, below is each document request that the Plaintiff is attempting to compel, along with the objections:

1.    All outbound dialer records for telemarketing calls that attempted to sell vehicle service contracts:
      i. US Direct Protect
     ii. All American Auto Protection (including its predecessor Precise)
    iii. Endurance[3]

---

[2] However, the parties were able to agree on a number of matters not present in this motion and narrow the scope of this motion.

[3] The Plaintiff's request includes a footnote at this point referencing a document produced by Interstate that identifies telemarketing complaints received related to Endurance.

7

*Response*: Objection; this request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiver of this objection, Defendant is not in possession of "dialer records."

2. All documents that relate to any consent or other permission to make the calls responsive to the prior request.

*Response*: Objection; this request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

3. All documents relating to the equipment used to make the telephone calls that are the subject of the response to Document Request No. 1.

*Response*: Objection; this request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiver of this objection, Defendant is not in possession of documents specifically referencing equipment.

6. The "gross receipts"[4] for US Direct Protect and Endurance.

*Response*: Objection; this request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. It is further contrary to the Court's prior ruling with regard to the scope of such discovery.

See Exhibit 1, at 5-6.

### III. ARGUMENT

Just as this Court directed Interstate's co-defendant N.C.W.C. to obtain telemarketing records from the third parties it had a contractual relationship with, Interstate should be directed to obtain the same from the third parties it had a

---

[4] The Plaintiff's request includes a footnote at this point clarifying that the Plaintiff is referring to the document requested by the name Interstate provided after the Court's prior motion to compel on this same issue. *See* Doc. No. 82.

8

contractual relationship with, which it has received telemarketing complaints about. Also, Interstate should not be permitted to assert that it is not vicariously liable for the telemarketing of those entities, and then not produce information related to the amount of money paid to these entities as a result of their telemarketing efforts.

### A. *The Requests For Documents Related to the Telemarketing Campaigns at Issue Are Reasonably Calculated to Lead to the Discovery of Admissible Evidence*

Interstate's primary basis for not producing the records requested are that it deems them irrelevant, and that they don't have physical possession of the documents. However, as discussed below, the documents are required to identify putative class members, and just because the documents are not in the "physical possession" of the Defendant that does not mean that they shouldn't be produced.

These requests are certainly "relevant" pursuant to Fed.R.Civ.P. 26(b)(1), as that phrase has been construed "to include any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *See In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 631, 636 (N.D. Ga. 2002) (Thrash, J.). The records at issue are vital to identifying class members subjected to the same illegal telemarketing that Ms. Mey was, as she is seeking to represent, which are:

<u>Class 1</u>

All persons within the United States who received more than one telemarketing call within any twelve-month period from while there were registered on the National Do Not Call Registry, from Interstate National Dealer Services directly, or through its agents, within the four years before the filing of the Complaint.

<u>Class 2</u>

All persons within the United States who Interstate National Dealer Services directly, or through its agents, called on a cellular telephone line by the use of an automatic telephone dialing system, within the four years before the filing of the Complaint.

*See* Doc. No. 1 at 12. In *Mey v. Frontier Communications Corporation*, pending in the United Sates District Court for the District of Connecticut, Civil Action No. 13-cv-00191, Doc. No. 102. In that Order, Judge Shea highlighted exactly why production of the documents was required:

> As discussed during the telephonic status conference, the burden will be on Ms. Mey and her experts to determine—on a historical basis—which calls were placed to cellular numbers or numbers on the NDNCR at the time they were made. Such information is relevant to determining class certification.

*Id.* at 7. A copy of this decision is attached as <u>Exhibit 2</u>.

It is well-settled that a proposed class representative must be given an opportunity to conduct class discovery before a Court makes any class certification determination. *See Mills v. Foremost Ins. Co.,* 511 F.3d 1300 (11th Cir. Fla. 2008) (vacating denial of class certification on the pleadings because the district court had not given plaintiffs the opportunity to conduct class discovery or move for

class certification); *See also Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 21-22 (2d Cir. 2003); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). Based on this principle, Courts in TCPA cases have granted motions to compel from defendants forcing them to obtain all records related to telemarketing campaigns conducted by third parties on their behalf. *See e.g. Desai v. ADT, Sec. Sys., Inc.*, United States District Court for the Northern District of Illinois, Civil Action No. 11-1925, Transcript of Proceedings, attached hereto as Exhibit 3 at pages 14-15 ("So as I understand, the request it so ask 60 dealers that we have who telemarket for a list of calls they made using pre-recorded messages. THE COURT: Authorized dealers, right."). ADT was required to go to each third party that engaged in telemarketing and obtain information related to their telemarketing efforts. This result is sensible, as a defendant should not be permitted to benefit from the telemarketing it commissions, and then not be required to obtain documents related to that telemarketing.

In order to serve a more narrowly tailored requests, the Plaintiff waited to serve these requests until after discovery had proceeded for a substantial amount of time so it could (1) identify all third parties that Interstate received telemarketing complaints for and (2) attempt to obtain a number of the call records herself. As described above, the Plaintiff has obtained over 3,000,000 telemarketing calls

made by third parties that were hired by Interstate to telemarket its goods or services. However, the records that the Plaintiff is requesting relate to the remaining calls that the Plaintiff was not able to secure, that Interstate should be compelled to retrieve pursuant to its contractual agreement with those parties, or through its Fed.R.Civ.P. 34(a) obligation. *See Gaylor v. Ga. Dep't of Natural Res.*, 2014 U.S. Dist. LEXIS 117935 (N.D. Ga. Aug. 25, 2014). In *Gaylor*, Judge Story held:

> Parties must produce documents within their possession, custody, or control unless the documents "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants have made no showing that it would be more convenient, less burdensome, or less expensive for Plaintiff to obtain responsive documents from the Georgia Archives than for Defendants to do so.

Interstate has made no showing that the documents can be obtained from another source that is "more convenient, less burdensome, or less expensive" than their contractual right. In fact, they do not appear to even have attempted to enforce that contractual right.

This discovery is required for the following reasons relating to Fed.R.Civ.P. 23: (a) Plaintiff needs discovery that identifies class members in order to demonstrate at class certification that the class is ascertainable; (b) Plaintiff needs discovery as to the consumers called by these third parties on behalf of Interstate so she can develop a satisfactory notice plan to advise consumers of any rights that

may be impacted by this litigation. Also, in the standard Fed.R.Civ.P. 26 context, Plaintiff needs discovery as to the identity of consumers who also received allegedly illegal telemarketing calls as these individuals are witnesses to the alleged illegal telemarketing campaign at issue and may be in the possession of evidence that will help advance the claims of the putative class.

**B.** *The Requests For Documents Related to the Money Paid to the Third Parties Who Made Telemarketing Calls to the Putative Class are Reasonably Calculated to Lead to the Discovery of Admissible Evidence*

The Plaintiff has also requested that Interstate provide financial information related to payments made to the third parties that the Plaintiff has obtained, or requested, telemarketing calls for. Interstate has refused to provide this information. Notably, Interstate had previously lodged an identical objection to information related to the co-defendants, which this Court overruled. *See* Doc. No. 82. This Court overruled that objection with good reason, as financial information is directly relevant to whether or not Interstate is liable for the calls made by the four third parties that the Plaintiff is requesting, two of which Interstate has already been compelled to produce.

The FCC Ruling *In re Joint Pet. filed by Dish Network*, *LLC*, FCC 13-54, 2013 WL 193449 (May 9, 2013) has provided clear guidance for courts in determining telemarketing liability for defendants that did not physically dial the

13

calls at issue, and it is through discovery that the FCC Ruling encouraged courts to allow parties to explore relationships between the parties:

> At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information– should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

*See* FCC Ruling at ¶46. In fact, it is exactly discovery related to information of this type, that promoted the FCC petition. *See* Id. at ¶9 (Summarizing the relationship between DISH Network and its Authorized Dealers and the allegations by the federal government against DISH "(1) DISH had authorized its dealers… to collect money for DISH Network, and to perform other services as part of their positions as authorized dealers;" (2) DISH "paid commissions and other financial incentives to the Dealers for telemarketing services;"). Interstate should not be permitted to commission telemarketing calls, and then refuse to produce information related to the money paid for that action in a lawsuit seeking to hold them liable for that telemarketing.

### C. *Interstate's Remaining Objections Should be Overruled.*

Interstate has again interposed boilerplate objections that retrieving these documents would be overbroad and unduly burdensome. Interstate has made no specific showing of what burden would be required to produce the documents and

14

for this reason alone the objection should be rejected. *See Southeastern Mech. Servs. v. Brody*, 2009 U.S. Dist. LEXIS 93903 *21 (N.D. Ga. 2009) ("[Defendants] have failed to show that these requests are unreasonably duplicative such that it would be unduly burdensome to require them to respond to these requests."); *Bank of Mong. v. M&P Global Fin. Servs.,* 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("Objections that state that a discovery request is 'vague, overly broad, or unduly burdensome" are, standing alone, meaningless…A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."). In fact, it does not appear that Interstate has attempted to obtain the documents, and instead is asserting that if it does not physically possess documents, it does not have to produce them. As explained above, that is not the law in this circuit, and in contrast to what this Court has previously held in this case.

## **CONCLUSION**

For the reasons stated herein, the Court should GRANT the Plaintiff's Motion to Compel, and compel complete responses to Document Requests 1-3 and No. 6, as well as any other relief the Court deems just for Interstate's discovery positions.

15

Respectfully Submitted by Plaintiff Diana Mey,
By Counsel

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com

Steven H. Koval
Attorney for Plaintiff
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA  30305
Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
Steve@KovalFirm.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2015, I electronically filed the forgeoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Anthony I. Paronich*