## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

DIANA MEY, individually and on
behalf of a class of all persons and
entities similarly situated,

        Plaintiff

vs.

INTERSTATE NATIONAL DEALER
SERVICES, INC., N.C.W.C., INC.
D/B/A DEALER SERVICES, and
ALL AMERICAN AUTO
PROTECTION, INC.

        Defendants.

Case No. 14-cv-01846-ELR

CLASS ACTION

## PLAINTIFF'S MOTION TO QUASH SUBPOENA
## AND/OR MOTION FOR A PROTECTIVE ORDER

## I. <u>INTRODUCTION AND ARGUMENT SUMMARY</u>

In this telemarketing case relating to a series of incoming telephone calls received by the Plaintiff Diana Mey, the Defendant Interstate National Dealer Services, Inc. ("Interstate") noticed a third party subpoena from AT&T for records of all *incoming and outgoing* calls Ms. Mey has received for *four years* (AT&T Subpoena, Exhibit "A").  The subpoena seeks, among other things, telephone call logs that will show every number for every incoming or outgoing call. This probe into every call Plaintiff made for four years will not just violate Plaintiff's right to privacy, but will trample upon the privacy rights of hundreds of individuals who called or received calls, but have no connection to the claims or defenses at issue here.  Notably, Interstate has not provided evidence that its telemarketing agents had Plaintiff's consent prior to making the automated calls to Plaintiff's number, which is on the National Do Not Call Registry, at issue in Plaintiff's claims. The calls made to or by Plaintiff are therefore, irrelevant to the claims and defenses at issue in this case. Notably, the Plaintiff has (a) produced actual recordings of all the calls and (b) provided her telephone bills in her possession for the entire timeframe that she alleged that she received telemarketing calls that are the subject of this case. The subpoena constitutes a broad fishing expedition in an effort to harass Plaintiff.

## II. <u>THE TELEPHONE CONSUMER PROTECTION ACT</u>

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones. The TCPA categorically bans persons and entities from initiating telephone calls using an automated telephone dialing system ("ATDS") to any telephone number assigned to a cellular telephone service.  *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

In addition, the National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers, be they live solicitations or computer generated.  *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.* The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of

the same entity in violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).

It is well settled law in this circuit that burden is on a TCPA defendant to establish that the telemarketing calls made were lawful. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) ("the prior express consent exemption acts as an affirmative defense") *affirmed by Breslow v. Wells Fargo Bank, N.A.*, 2014 U.S. App. LEXIS 10457 (11th Cir. Fla. June 5, 2014). Interstate has not produced any evidence that the Plaintiff provided consent to receive the calls at issue.

Under the TCPA, a seller of a product or service, like Interstate, may be vicariously liable for a third-party marketer's violations of Sections 227(b) and 227(c), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. filed by Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling"). A seller is liable under Sections 227(b) and (c) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47. Additionally, a seller may be vicariously liable for violations of those provisions under principles of apparent authority and ratification.

### III.   RELEVANT FACTS AND BACKGROUND

Plaintiff Diana Mey is one of many American cellular phone users pestered by automated and unsolicited telemarketing calls despite having registered her phone number on the National Do Not Call Registry, which is designed to avoid the exact kind of . Ms. Mey alleges in her complaint that she received, on her cell phone the number of which was listed on the Registry, automated telemarketing calls from AAAP and other dealers of Interstate seeking to promote the goods and services of Interstate. *See* Complaint (Doc No. 1) at ¶¶2, 25-37 and 38-48. In Ms. Mey's initial disclosures, she also disclosed that she received a similar telemarketing call from US Direct Protect, the day she filed her Complaint. Ms. Mey further alleges in the Complaint that she never consented to receive these calls, and they were placed to her for no legitimate purpose. *Id.* at ¶3. Ms. Mey further alleges that AAAP and other third parties like US Direct Protect were authorized to telemarket on behalf of Interstate, and contend that Interstate is liable for telemarketing conducted by Dealer Services or AAAP that was in violation of applicable telemarketing law. *Id.* at ¶22-24; ¶49-53. Because the calls were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Ms. Mey brings this action on behalf of a proposed nationwide class of other

persons who received illegal telemarketing calls from or on behalf of Interstate. *Id. at* ¶4.

Interstate is a provider of extended warranties for automobiles. However, their contact with the general public is limited. Instead, it relies on third party telemarketers, such as AAAP and US Direct Protect, who use telemarketing to sign individuals up for Interstate warranties. After the sale is completed, Interstate services the warranty.

Throughout the course of discovery, Plaintiff has obtained documents that confirmed that during the time period of the calls to the Plaintiff, Interstate had a contractual relationship with US Direct Protect and AAAP that allowed them to solicit business on behalf of Interstate. The Plaintiff has also obtained documents from the defendants in this action that explain the nature of the relationship that continued for a number of years after those contracts were signed, including documents that acknowledged those parties would be telemarketing. Interstate has not produced any evidence that the Plaintiff provided consent to receive the calls at issue.

The Plaintiff has also issued approximately 20 third party subpoenas, designed to both identify class members and further develop her theories of vicarious liability with respect to Interstate. In response to two of these subpoenas, TouchTone Communications and 0995316 B.C. Ltd, the Plaintiff has obtained

records of more than 3,000,000 attempted telephone calls by AAAP and US Direct Protect, including contact made with the Plaintiff. It is with these records, as well as other similar telemarketing call records that the Plaintiff may obtain in first party and third party discovery that the Plaintiff will use to identify putative class members.

## IV.   ARGUMENT

The claims brought in this putative class action for Defendants' violations of the Telephone Consumer Protection Act ("TCPA"), _involve only three telephone calls_ received by Plaintiff that discovery has confirmed promoted the services of Interstate – two received on April 17, 2013 and June 19, 2014 at (304) 242-XXXX, a phone line owned by Plaintiff, from US Direct Protect; and another received on March 27, 2014 at (304) 242-XXXX, the same phone line owned by Plaintiff, from All American Auto Protection.[1] As an initial matter, the Plaintiff has (a) produced actual recordings of all the calls and (b) provided her telephone bills in her possession for the entire timeframe that she alleged that she received telemarketing calls that are the subject of this case pursuant to the protective order at issue in this matter. Although this dispute centers on only these three calls, and similar calls to

---

[1] The Plaintiff also alleged that the final co-defendant, N.C.W.C., Inc., made calls to the Plaintiff promoting Interstate services, but discovery has confirmed that the relationship between those two entities ended prior to the telemarketing calls, and the Plaintiff will be filing a stipulation of dismissal with respect to that defendant shortly. However, those calls were in December 2012, January 2013, and March and April of 2014.

putative class members, and the fact that the Plaintiff has produced recordings as well as the phone bills in her possession, Interstate seeks to discover four years' worth of calls from the subpoena, all of which are irrelevant because Interstate has provided no evidence it relied on any express consent in making the telemarketing calls.

Plaintiff has a legitimate personal interest in the privacy of the calls made. Additionally, numerous third parties who made or received calls personal calls unrelated to the issues in this matter have interests in maintaining the privacy of their own telephone numbers. Plaintiff requests her Motion to Quash be granted, or alternatively, for a Protective Order that will narrow the production to documents and time periods that are relevant to the calls in this litigation.

1. **Quashing the subpoena served on AT&T, or alternatively, a Protective Order is warranted to prohibit discovery of irrelevant and private information about Ms. Mey.**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party may obtain discovery regarding any non-privileged matter "that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). While it is not an unlimited license for fishing expeditions, this rule is to be broadly construed with a bias in favor of open discovery. *See Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, all discovery is subject to the

limitations of Rule 26(b)(2)(C), which states that the court must limit the extent of

discovery if it determines that:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).  Interstate has had ample opportunity to discover

whether Ms. Mey consented to any of the calls at issue. Interstate simply needs to

ask its telemarketing agents, US Direct Protect or AAAP, for this information, but

has not produced any, because such evidence does not exist, and through this

subpoena, apparently intends to try to bootstrap in this evidence, but should not be

permitted to do so at the cost of infringing on hundreds of individuals right to

privacy.

Rule 45 of the Federal Rules of Civil Procedure allows the Court to quash or

modify a subpoena that "requires disclosure of privileged or other protected

materials not subject to any exception, or subjects a person to undue burden."

Fed.R.Civ.P. 45(c)(2)(B), (c)(3)(A)(i)–(iv).  Standing to challenge a subpoena in

the Eleventh Circuit, is somewhat broad, allowing motions to quash where the

party alleges a "personal right or privilege" with respect to the subpoenas. *State of

Florida v. Jones Chem., Inc.,* 1993 WL 388645 *2 (M.D.Fla.1993).  Here the

subpoena seeks from AT&T production of the following documents:

### Attachment "A"

(1) Cell phone records of all cell phone activity regarding Target Number (304) 242-1943 indicating incoming and outgoing phone calls to and from the target number, including the times of such calls, and indicating the duration of each call for the time period of May 1, 2010 through and including June 30, 2014; and

(2) Cell phone records of all cell phone activity regarding Target Number (304) 280-1607 indicating incoming and outgoing phone calls to and from the target number, including the times of such calls, and indicating the duration of each call for the time period of May 1, 2010 through and including June 30, 2014.

*See* Exhibit A. On its face, the subpoena seeks irrelevant information that pertains

to the personal and confidential calling data.  Documents responsive to these

requests will contain nearly all logs of calls made to or by third parties that have

nothing to do with this matter, and that's not something Interstate appears to

dispute.  Further, the requests seek documents for an irrelevant time period as they

request documents that are not concurrent with the time of the calls that form the

basis for Ms. Mey's TCPA claims.  The subpoena should be quashed, or at least

modified to correlate to the relevant dates of Ms. Mey's claims.

**2. The call log data that Interstate seeks is irrelevant to the claims or defenses at issue because no Defendant has made a threshold showing that it relied on Plaintiff's consent to make the telemarketing calls.**

The Plaintiff has alleged that the defendants made automated calls that violated the TCPA, 47 U.S.C. § 227.  The TCPA prohibits any non-emergency call to a telephone made using automated dialing equipment without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(B). The TCPA exempts from liability calls made to a cell phone "made with the prior express consent of the called party." *Id.*  Express consent is "[c]onsent that is clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009)(citing Black's Law Dictionary 323 (8th ed.2004)). Further, "only the subscriber . . . can give such consent, either directly or through an authorized agent.  *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1252 (11th Cir. 2014) (rejecting State Farm's argument that "intended recipient" is the "called party" under the TCPA's consent exception). "[P]rior express consent" is "an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.,* 449 F. App'x 598, 600 n. 1 (9th Cir.2011); *Breslow v* Wells Fargo Bank, N.A., 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012) (in the interest of protecting consumers, the <u>defendant</u> must sustain the burden to show it obtained necessary, prior express consent).

Plaintiff alleges that she received these calls from the Defendants in violation of the TCPA. The Defendants either had Plaintiff's prior express consent to make the automated calls, or they did not. At the time of the calls at issue, the Federal Communications Commission required "some form of prior express consent for autodialed or prerecorded non-telemarketing calls to wireless numbers" and "leaves it to the caller to determine, when making an autodialed or prerecorded non-telemarketing call to a wireless number, whether to rely on oral or written consent in complying with the statutory consent." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1992, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1842 (2012) (2012 TCPA Order). For Defendants to raise a defense of consent, they would need to make a threshold showing that they relied on Ms. Mey's expressly given consent *prior* to making the calls at issue.  Therefore, the proof of reliance on the express consent must be in the Defendants' possession. None of the defendants have provided any evidence that they relied on prior express consent. Despite this fact, Plaintiff has produced recordings of the calls and her phone bills from the time frame of the calls that she possesses. However, Interstate still issued the subpoena to the Plaintiff's phone carrier. Without a valid assertion that the Defendants relied on some express consent prior to making the calls, there is no relevance to the phone call logs requested from AT&T.

Accordingly, the Court should enter a protective order and quash, or in the alternative, modify the Subpoena to prohibit Interstate's discovery of Ms. Mey's personal telephone log, which are unrelated to the claims or defenses raised in this litigation. *Goulet v. Mederi Caretenders VS of SW FL, LLC*, 2011 WL 652851, *1 (M.D. Fla. Feb. 14, 2011) ("A subpoena  may be quashed if it calls for the production of clearly irrelevant matters."); *Palumbo v. Shulman*, 97 Civ. 4314, 1998 WL 720668, *3 (Oct. 13, 1998) ("a subpoena which calls for the production of irrelevant material, should not be enforced.").

### 3. Interstate's right to access personal call data is outweighed by Ms. Mey's and numerous third parties' rights to privacy.

Congress has long recognized that individuals have a privacy interest in telephone records, making it a criminal offense to obtain telephone records without the knowledge or consent of the consumer through any fraudulent means.  As Congress' findings to the Telephone Records and Privacy Protection Act of 2006 states:

"Sec. 2 FINDINGS.

Congress finds that –

(1)   telephone records can be of great use to criminals because the information in call logs may contain a wealth of personal data;

(2)   call logs may reveal the names of telephone users' doctors, public and private relationships, business associates and more;

(3)   call logs are typically maintained for the exclusive use of phone companies, their authorized agents, and authorized consumers

13

PL 109–476, January 12, 2007, 120 Stat 3568.Also, The Telecommunications Act,

47 U.S.C. § 222, includes a general duty for telecommunications carriers to protect

from disclosure of a customer's proprietary network information ("CPNI").

Section 222 defines CPNI a follows:

> "(A) information that relates to the quantity, technical configuration,
> type, destination, location, and amount of use of a telecommunications
> service subscribed to by any customer of a telecommunications
> carrier, and that is made available to the carrier by the customer solely
> by virtue of the carrier-customer relationship; and
>
> (B) information contained in the bills pertaining to telephone
> exchange service or telephone toll service received by a customer of a
> carrier."

47 U.S.C. § 222(h)(1).As the title of § 222 ("privacy of customer information")

and the above quoted language suggest, this provision was principally intended to

protect consumer's privacy interests. *U.S. West, Inc. v. FCC,* 182 F.3d 1224, 1236

(10th Cir.1999) ("[T]he specific and dominant purpose of § 222 is the protection of

customer privacy."); Federal Communications Comm'n, Second Report and Order

and Further Notice of Proposed Rulemaking in the *Matter of Implementation of the*

*Telecommunications Act of 1996,* 13 F.C.C.R. 8061 ¶ 1 (1998) ("Congress

recognized, however, that the new competitive market forces and technology

ushered in by the 1996 Act had the potential to threaten consumer privacy

interests. Congress, therefore, enacted section 222 to prevent consumer privacy

protections from being inadvertently swept away along with the prior limits on competition.").

Moreover, the Supreme Court has long "recognized that '[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.' " *Frisby v. Schultz,* 487 U.S. 474, 484, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (quoting *Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). Plaintiff's recognized privacy rights that are infringed by the subpoena to AT&T. Interstate seeks to discover every individual's telephone number that called or was called by someone using these numbers. *See* Exhibit "A". For one, courts in this circuit have recognized and protected the privacy interests of non-parties by keeping their telephone numbers private.  *Berkeley v. Eisen*, 699 So. 2d 789, 792 (Fla. Dist. Ct. App. 1997) (rejecting the request for investors' telephone numbers, even though their names were known, weighing the investors' constitutionally protected privacy interests as greater than the need for the information). Interstate's request infringes upon the privacy rights of hundreds of persons who may have called or been called by Plaintiff or another member of his household. Weighing the substantial privacy rights of numerous non-parties against the relevance and need of the material sought – diminished greatly by the absence of a valid consent defense – Interstate's subpoena of AT&T should be quashed, or in

15

the alternative, modified to protect the disclosure of records of private telephone

calls.

## CERTIFICATE OF COUNSEL

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for

Plaintiff certifies that he has conferred with Interstate's counsel in a good faith

attempt to resolve the issues raised herein without court action, but that such

efforts were unavailing.

## CONCLUSION

Interstate cannot establish a minimum threshold of relevancy for the

requested call logs, let alone overcome the substantial privacy interests of the

Plaintiff and numerous third parties. Put simply, the Defendant either relied on Ms.

Mey's express consent prior to making the automated or they didn't.  Interstate

lacks evidence of reliance, and seeks to find it in third party discovery.  Rather than

place the burden on Ms. Mey or third parties, Interstate should first seek to

discover threshold evidence of reliance at a logical and less burdensome source –

their telemarketing agents.

Plaintiff respectfully requests the Court: (i) grant the instant Motion to

Quash; (ii) enter an order pursuant to FRCP 26(c) and 45(c) protecting Ms. Mey's

private information contained in the telephone logs; (iii) quash the subpoena to

produce documents issued by Interstate to AT&T, or in the alternative, modify and

limit the subpoena to documents generated for the numbers she was called on in the months she was called; and (iv) grant such other and further relief as this Court deems necessary and proper.


Respectfully Submitted by Plaintiff Diana Mey,
By Counsel

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com

Steven H. Koval
Attorney for Plaintiff
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA  30305
Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
Steve@KovalFirm.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2015, I electronically filed the forgeoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Anthony I. Paronich*