# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff

vs.

INTERSTATE NATIONAL DEALER SERVICES, INC., DAVID CUNNINGHAM, US DIRECT PROTECT, LLC and ALL AMERICAN AUTO PROTECTION, INC.

    Defendants.

Case No. 14-cv-01846-ELR

CLASS ACTION

**PLAINTIFF'S MOTION TO QUASH A DEPOSITION SUBPOENA *DUCES TECUM* SERVED ON HER HUSBAND RELATING TO TESTIMONY AND DOCUMENTS THAT ARE SUBJECT OF A PENDING DISCOVERY DISPUTE**

## I. <u>INTRODUCTION AND ARGUMENT SUMMARY</u>

In this telemarketing case relating to a series of incoming telephone calls received by the Plaintiff Diana Mey, the Defendant Interstate National Dealer Services, Inc. ("Interstate") noticed a deposition subpoena *duces tecum* for the Plaintiff's husband, Mark Mey relating to the purchase of a 2011 vehicle (Mey Subpoena, <u>Exhibit 1</u>). Interstate has subpoenaed the Plaintiff's husband for documents *that are already the subject of a discovery dispute before this Court* that Interstate has requested from Ms. Mey. *See* Doc. Nos., 139, 140 and 146. By serving this subpoena, Interstate has ignored this Circuit's clear directive that a third party should not be involved in the discovery process if the documents can be obtained from litigant. For this reason alone, the Plaintiff's Motion should be granted. Additionally, as explained below, the mere purchase of a vehicle cannot constitute prior express consent under the Telephone Consumer Protection Act to receive telemarketing calls. Finally, despite a prior Court Order to do so, Interstate has not demonstrated that it is through the purchase of a vehicle (or any other action) that Ms. Mey received the illegal telemarketing calls at issue. As such, the information requested from Mr. Mey, which is available from Ms. Mey, an actual party in this case, is not reasonably calculated to lead to the discovery of admissible evidence.

## BACKGROUND

In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones. The TCPA categorically bans persons and entities from initiating telephone calls using an automated telephone dialing system ("ATDS") to any telephone number assigned to a cellular telephone service.  *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).  A telemarketer can only make a sales call to a cell phone if it has the recipients' prior express consent in writing. Under the TCPA and FCC regulations, a telemarketer who claims it had consent to telemarket to a consumer's cell phone via an ATDS bears the burden of proof, and must maintain records that prove such a claim.  The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added).  "[P]rior express consent" is "an affirmative defense

3

for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.,* 449 F. App'x 598, 600 n. 1 (9th Cir.2011); *Breslow v.* Wells Fargo Bank, N.A., 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012) (in the interest of protecting consumers, the <u>defendant</u> must sustain the burden to show it obtained necessary, prior express consent). Most recently, in February of 2012, the Federal Communications Commission reiterated that, specifically in the context of automated telemarketing:

> Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

*See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

In addition, the National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers, be they live solicitations or computer generated. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

4

§ 64.1200(c)(2). A telemarketer can only make a sales call to a cell phone if it has the recipients' prior express consent in writing, or where the seller whose goods are being advertised has a prior established business relationship with the consumer being called. Like the burden of proof as to prior express consent, noted above, the telemarketer bears the burden of proof as to a claimed EBR exemption. The EBR exemption to a TCPA claim alleging a violation of the TCPA's prohibition against telemarketing to consumers on the NDNC is set forth at 47 CFR 64.1200(c) which provides that no person or entity shall *initiate* any *telephone solicitation* to a residential telephone subscriber whose number is listed on the NDNC. The regulations go on to define a "telephone solicitation" as:

> …the *initiation of a telephone call* or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:
>
> (i) To any person with that person's prior express invitation or permission;
>
> (ii) To any person with *whom the caller* has an established business relationship;…

Accordingly, the EBR exemption applies only to the entity that "initiates" the call, and to the "caller" who has the EBR with the recipient of the call at issue. In its Order on May 9, 2013, in regards to the scope of the TCPA as it applies to third parties who did not physically dial calls, the FCC explicitly concluded that:

5

> "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, ***and generally does not include persons or entities, such as third-party retailers,*** that might merely have some role, however minor, in the causal chain that results in the making of a telephone call.

*See In the Matter of The Joint Petition Filed By Dish Network,* 28 FCC Rccd 6574 * 29-30 (April 17, 2013) (emphasis added).

Accordingly, the only entity that can claim an EBR exemption to a TCPA claim is the entity that that physically dials the telemarketing calls at issue. This is the entity that "initiates" the call. Similarly, the relationship that is the focus of the EBR, as set forth in the TCPA and its implementing regulations, is the relationship between the consumer and the "caller."

## **RELEVANT FACTS**

Diana Mey is one of many American cellular phone users pestered by automated and unsolicited telemarketing calls despite having registered her phone number on the Registry. Ms. Mey alleges in her complaint that she received, on her Registry listed cell phone, automated telemarketing calls seeking to promote the goods and services of Interstate. *See* Doc. No. 129 at ¶¶2, 29-59. Interstate is a provider of extended warranties for automobiles. However, their contact with the general public is limited. Instead, it relies on third party telemarketers to initiate calls to consumers and to sell Interstate auto warranties..

6

Throughout the course of discovery, Plaintiff has issued approximately 20 third party subpoenas, designed to both identify class members and further develop her theories of liability with respect to Interstate. In response to two of these subpoenas, the Plaintiff has obtained millions of call records made by third parties, working for Interstate, seeking to sell auto warranties. It is with these records, in part, that the Plaintiff will use to identify putative class members.  These call records included some of the calls made to Ms. Mey.  *See* Exhibit 2 – Expert Report of Jeffrey A. Hansen (without exhibits).

To ascertain whether or not Interstate has any consent or EBR defenses to this case, Ms. Mey propounded discovery to Interstate to which Interstate refused to respond.  A Motion to Compel was then filed following which this Court Ordered Interstate to produce all evidence of consent possessed by either Interstate itself or by third parties working for Interstate.  *See* Doc. No. 137.  In its Order, this Court aptly recognized[1]:

> Mey has tailored her interrogatories to the records of two particular companies that provided telephone line services to the telemarketers that Interstate allegedly used to contact potential customers…
> In short, Mey wants to know those for whom Interstate is asserting an affirmative defense with respect to the individuals who are putative class members that can be identified from the records produced by B.C. and TouchTone, and she wants to know the basis for asserting the affirmative defense as to any such individuals identified….

---

[1] The discovery dispute was referred to Judge Vineyard.

> Interstate shall undertake a review of its own records and identify any individuals whose names appear in the records produced by B.C. and TouchTone that Interstate contends agreed, either directly or indirectly, to be contacted by Interstate or had with Interstate an established business relationship

See Doc. No. 137 at 5, 6 and 9. To date, Interstate has still failed to produce any evidence whatsoever that the telemarketing calls at issue are subject to any consent or EBR exemption.  Recently, however, Interstate admitted in a recent court filing that "[o]ther than this lawsuit, Interstate has no record or information pertaining to Plaintiff."[2]

Despite a prior Order of the Court, its utter failure to produce any evidence of consent or EBR as to any of the calls at issue, and its ***admission*** that it "has no record or information relating to the plaintiff," Interstate has served Ms. Mey's husband, Mark, with a subpoena seeking documents related to automobiles purchased by the Mey family, and warranties relating to those automobiles, since 2011.  See Exhibit 1.  Interstate has also served similar discovery requests upon Ms. Mey directly to which objections had been made and to which a Motion to Compel has been filed.  Ms. Mey has objected to this intrusive discovery because, as this Court similarly held in its Order quashing the AT&T subpoena, "Interstate has failed to explain how the records it seeks are relevant to any of the claims or defenses at issue in this case." See Doc. No. 138 at 4.  Despite the pending Motion

---

[2] *See* Doc. No. 139 at 3.

to Compel, Interstate has now issued a subpoena to Mr. Mey, essentially seeking to circumvent Ms. Mey's objections to discovery served on her directly. Accordingly, Ms. Mey petitions the Court with the instant Motion to Quash as information relating to automobiles purchased by the Mey family since 2001 has absolutely no relevance to whether or not the telemarketing calls at issue in this case were made in violation of the TCPA.

## ARGUMENT

### 1. Quashing the Subpoena is Warranted Considering that Interstate has Already Requested the Documents from the Plaintiff.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party may obtain discovery regarding any non-privileged matter "that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). While it is not an unlimited license for fishing expeditions, this rule is to be broadly construed with a bias in favor of open discovery. *See Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, all discovery is subject to the limitations of Rule 26(b)(2)(C), which states that the court must limit the extent of discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

9

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C). As described above, Interstate has already requested the same documents from the Plaintiff in this action, and while a discovery dispute is pending related to those documents, should not be permitted to go to the Plaintiff's husband, a non-party, and try to obtain the same information through a subpoena. This basic covenant of Fed.R.Civ.P. 45 was explained by Judge Anand in *TQP Dev. LLC v. Alaska Air Group, Inc.*, 2012 U.S. Dist. LEXIS 172767 (N.D. Ga. Nov. 28, 2012):

> the Rule specifically imposes on the issuer of the subpoena an affirmative duty to avoid imposing undue burden or expense on the non-party. See Fed.R.Civ.P. 45(c)(1). This duty reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incurring undue burden and expense. Thus, where the requested information can also be obtained from a party, courts have taken a more restrictive approach to compelling Rule 45 discovery from a non-party. See, e.g., WM High Yield v. O'Hanlon, 460 F.Supp.2d 891, 896 (S.D. Ind. 2006) (requiring party to show that it sought information unsuccessfully from a party before resorting to Rule 45 non-party discovery)

*Id.* at 3-4. Here, Interstate has served requests on Ms. Mey through first party discovery and her husband through a third party subpoena. The dispute relating to these documents should be resolved through the first party discovery process. For this reason alone, the Motion to Quash should be granted.

### 2. Quashing the Subpoena is appropriate because Interstate has not made a threshold showing that it relied on Plaintiff's consent to make the telemarketing calls or had an EBR with Ms. Mey.

The Plaintiff has alleged that the defendants made automated calls that violated the TCPA, 47 U.S.C. § 227.  In response to the Complaint, Interstate asserts that Ms. Mey, and other class members "may have provided prior express consent to receive the alleged calls, either directly or indirectly, and therefore there is no liability under the TCPA for such calls." *See* Doc. No. 29 at 10.  Although it makes this assertion in its Answer to the Complaint as an affirmative defense, Interstate has failed to produce a scintilla of consent evidence to even suggest that the consent or EBR exemptions apply to the calls made to Ms. Mey or to any other class members.  For Interstate to raise a defense of consent, it would need to make a threshold showing that they relied on Ms. Mey's expressly given consent or EBR relationship with Interstate *prior* to making the calls at issue, as a basis for making the calls at issue. Therefore, the proof of reliance on prior express written consent or EBR must be in Interstate's possession now.  Interstate has failed to make such a showing and, in fact, has admitted that "[o]ther than this lawsuit, Interstate has no record or information pertaining to Plaintiff."[3]  Having admitted that it has no evidence of any relationship whatsoever with anyone in the Mey household, Interstate has effectively conceded that it did not rely on any consent based

---

[3] *See* Doc. No. 139 at 3.

11

connection whatsoever to the Mey home when it, or its agents, made telemarketing calls to the Mey home. Accordingly, Interstate's subpoena to Mark Mey seeking information relating to automobiles purchased by the Mey family, has no conceivable relevance to any consent defense applicable to this case. Interstate's subpoena to Mr. Mey suffers from the same substantive flaw as the subpoena previously issued to AT&T broadly seeking telephone records for the Mey household. Interstate has failed to demonstrate any possible manner in which the documents sought via subpoena from Mr. Mey could relate to Plaintiff's consent to receive telemarketing calls from Interstate. For this reason, the Motion to Quash should be granted.

   **3. Quashing the Subpoena is appropriate because any vehicle purchase, in and of itself, cannot amount to the Prior Express Consent required to make telemarketing calls by Interstate.**

Finally, given Interstate's admission that "[o]ther than this lawsuit, Interstate has no record or information pertaining to Plaintiff," Interstate has itself has conceded that there is no relevance between the documents requested from Mr. Mey and Interstate's consent defenses. The defense of "prior express consent" requires that Interstate produce evidence that Ms. Mey expressly consented in writing to receive telemarketing calls from Interstate. See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 ¶ 7 (FCC 2012) ("prior express consent" under the TCPA exists

where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830, 1844; 2012 FCC LEXIS 794 (Feb. 12, 2012) (consent must now be in writing and the disclosures must be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.,* that the consumer will receive future calls by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. *Id.* As Interstate admits it possesses no records relating to Ms. Mey, it effectively admits it does not possess documents that evidence Ms. Mey's written consent to receive telemarketing calls from Interstate.

Similarly, Interstate's concession that it possesses no records relating to any relationship with Ms. Mey effectively precludes it from asserting an EBR defense as to Ms. Mey's claims. Under the TCPA, a seller such as Interstate is only entitled to call a consumer under the EBR exemption based ***on its own*** EBR with a consumer. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14083-14084, ¶117 (Jul. 3, 2003). For this reason, even if Mr. Mey were to possess non Interstate documents relating

to the purchase or automobiles or auto warranties on those automobiles, such documents in no way evidence an EBR consent defense applicable to this case as the documents do not relate to Interstate and cannot evidence and EBR between Interstate and anyone in the Mey family. As Interstate admits it had no prior relationship with Ms. Mey it cannot claim an EBR exemption to the TCPA.

## CONCLUSION

For all of the above reasons, the Court should enter a protective order and quash the subpoena issued to Mr. Mey, as the documents sought have no relevance to the claims or defenses raised in this litigation. *Goulet v. Mederi Caretenders VS of SW FL, LLC*, 2011 WL 652851, *1 (M.D. Fla. Feb. 14, 2011) ("A subpoena may be quashed if it calls for the production of clearly irrelevant matters."); *Palumbo v. Shulman*, 97 Civ. 4314, 1998 WL 720668, *3 (Oct. 13, 1998) ("a subpoena which calls for the production of irrelevant material, should not be enforced.").

## CERTIFICATE OF COUNSEL

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for Plaintiff certifies that he has conferred with Interstate's counsel in a good faith attempt to resolve the issues raised herein without court action, but that such efforts were unavailing.

Respectfully Submitted by Plaintiff Diana Mey,
By Counsel

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com

Steven H. Koval
Attorney for Plaintiff
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA  30305
Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
Steve@KovalFirm.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2015, I electronically filed the forgeoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Anthony I. Paronich*