## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

DIANA MEY, individually and on
behalf of a class of all persons and
entities similarly situated,

       Plaintiff,

vs.

INTERSTATE NATIONAL DEALER
SERVICES, INC.,
ALL AMERICAN AUTO
PROTECTION, INC., DAVID
CUNNINGHAM, and
US DIRECT PROTECT,

      Defendants.

Case No. 1:14-cv-01846-ELR

CLASS ACTION

## PLAINTIFF'S MOTION FOR FINAL
## <u>APPROVAL OF THE CLASS ACTION SETTLEMENT</u>

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 4

   A.  Background and the Telephone Consumer Protection Act ............................ 4

   B.  Plaintiff's Allegations ............................................................................. 5

   C.  Plaintiff's Discovery Efforts Identify Putative Class Members ..................... 5

ARGUMENT ................................................................................................... 7

   A.  THE AGREEMENT IS THE RESULT OF ARM'S LENGTH NEGOTIATION BETWEEN THE PARTIES WITH THE ASSISTANCE OF AN EXPERIENCED MEDIATOR. ................................................................. 7

   B.  CLASS MEMBERS HAVE BEEN PROVIDED SUFFICIENT NOTICE OF THE ACTION AND THE SETTLEMENT ...................................... 8

   C.  THE AGREEMENT SATISFIES EACH OF THE ELEVENTH CIRCUIT'S *BENNETT* FACTORS. .................................................... 10

     1. Likelihood of Success at Trial. ............................................................ 11

     2. The Range of Recovery and the Point the Agreement was Reached is Fair, Reasonable, and Adequate. ............................................................. 13

     3. The Complexity and Expense of Further Litigation. ................................ 15

     4. Substance and Amount of Opposition to Agreement. .............................. 16

     5. Stage of Proceedings at which Settlement Achieved. ............................... 21

   D.  THE ATTORNEYS' FEES AND INCENTIVE AWARD REQUESTED FROM THE SETTLEMENT FUND ARE REASONABLE. ........ 22

CONCLUSION ............................................................................................... 23

Certification of Compliance with LR 5.1B ........................................................ 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
  No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 (S.D. Fla. May 7, 2002)................................21

*Adams v. AllianceOne Receivables Mgmt.*,
  No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ................................................14

*Allapattah Servs., Inc. v. Exxon Corp.*,
  No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 (S.D. Fla. Apr. 7, 2006)....................................19

*Arthur v. Sallie Mae*,
  No. C10-198, 2012 U.S. Dist. LEXIS 3313 (W.D. Wash. Jan. 10, 2012) ..................................14

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988)........................................................................7

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ............................................................. *passim*

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................22

*Camden I Condo Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................17, 22

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663, 2016 WL 228345 (U.S. 2016) .......................................................2, 12

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  2008 U.S. Dist. LEXIS 121093 (N.D. Ga. Oct. 20, 2008) ................................................. *passim*

*Charvat v. AEP Energy, Inc.*,
  Civil Action No. 13-cv-00662 (N.D. Ill. Jan. 16, 2015).............................................18

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ....................................................................22

*In re CP Ships Ltd. Sec. Litig.*,
  578 F. 3d 1306 (11th Cir. 2009) ..........................................................................8

*Cummings v Sallie Mae*,
  12 C-9984 (N.D. Ill. May 30, 2014).............................................................18

*Desai v. ADT Sec. Servs., Inc*.,
  No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) ...........................................19

*Desai v. ADT Sec. Servs., Inc.*,
  No. 11-1925, 2011 WL 2837435 (N.D. Ill. July 18, 2011) .......................11

*In re Enhanced Recovery Co*.,
  13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) ....................................14

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ..................................................................9

*Figueroa v. Sharper Image Co*.,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007)......................................................13

*Fresco v. Auto. Directions, Inc.*,
  2009 WL 9054828 (S.D. Fla. Jan. 20, 2009)..............................................20

*Gehrich v. Chase Bank, USA, N.A.*,
  No. 1:12-cv-05510 (N.D. Ill. Aug. 12, 2014) ...........................................18

*Grant v. Capital Mgmt. Servs*.,
  No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014)................14

*Hanley v. Fifth Third Bank*,
  No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) ...........................................18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................22

*Ingram v. The Coca-Cola Co*.,
  200 F.R.D. 685 (N.D. Ga. 2001) ..........................................................7, 15

*Jamison v First Credit Servs., Inc*.,
  No. 1:12-cv-04415 (N.D. Ill. July 29, 2013) ...........................................12

*Jurvis v. Inamed Corp.*,
  685 F.3d 1294 (11th Cir. 2012) ..................................................................8

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*,
  Civil Action No. 11-CV-02467 (D. Md. Oct, 28, 2014) .........................18

*Martin v. Dun & Bradstreet, Inc.*,
  No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) ...........................................18

iii

*In re Motorsports Merchandise Antitrust Litig.*,
112 F. Supp. 2d 1329 (N.D. Ga. 2000) .......................................................................14

*Newman v. Sun Capital Corp.*,
No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ..............11

*Paldo Sign and Display Company v. Topsail Sportswear, Inc.*,
No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) .............................................................19

*Perez v. Asurion Co.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ......................................................................10

*Robins v Spokeo, Inc.*,
742 F.3d 409 (9th Cir. 2014) .................................................................................2, 12

*Sabol v. Hydroxatone LLC*,
No. 11-cv-4586, 2013 U.S. Dist. LEXIS 166520 (D. N.J. Nov. 22, 2013) ................22

*In re Shell Oil Refinery*,
155 F.R.D. 552 (E.D. La. 1993) ................................................................................16

*Spillman v. RPM Pizza, LLC*,
No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) .......................14

*In re Sturm, Ruger & Co., Inc.*,
No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ..................3

*Thomas v. Taco Bell Corp.*,
879 F. Supp. 2d 1079 (C.D. Cal. 2012) .....................................................................11

*U.S. v. Alabama*,
271 F. App'x 896 (11th Cir. 2008)...........................................................................8, 9

*Warnick v. Dish Network, LLC*,
No. 1:12-cv-1952 (D. Colo. Oct. 30, 2014)...............................................................12

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) .................................................................................17

*Wolff v. Cash 4 Titles*,
No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012).................................17

**Rules**

Fed. R. Civ. P. 12.......................................................................................................21

Fed. R. Civ. P. 23.................................................................................................8, 9, 23

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................8

iv

Fed. R. Civ. P. 23(e)(1) ...................................................................................................8

**Regulations**

47 C.F.R. § 64.1200(c)(2) ...............................................................................................4

**Statutes**

28 U.S.C. § 1715(b) .........................................................................................................9

47 U.S.C. § 227 ....................................................................................................... *passim*

47 U.S.C. § 227(b) ......................................................................................................4, 11

47 U.S.C. § 227(c) ...........................................................................................................4

47 U.S.C. § 227(c)(5) ................................................................................................4, 11

**Other Authorities**

*Judges' Class Action Notice and Claims Process Checklist and Plain Language*
    *Guide* (2010) ...........................................................................................................8

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in*
    *Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV.
    1529 (2004) ...............................................................................................................3

# INTRODUCTION

Plaintiff Diana Mey ("Plaintiff" or "Class Representative"), individually and as a representative of the Settlement Class Members, submits this memorandum in support of final approval of the class action settlement with Interstate National Dealer Services, Inc., preliminarily approved by this Court on January 28, 2016. [ECF No. 163].

This proposed class action settlement concerns allegations that Interstate National Dealer Services, Inc. ("Interstate"), an auto warranty company, hired third parties, including the co-defendants, who allegedly placed unsolicited telephone calls to phone numbers listed on the Do Not Call Registry (Count I) and allegedly used an automatic telephone dialing system or an artificial or prerecorded voice to place calls to wireless phone numbers without prior express consent (Count II), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA"). Interstate denies these allegations, and all other allegations of wrongdoing and liability.

All Parties were mindful of the benefits to each party, the putative class, and the Court in addressing the prospect of settlement in good faith, as soon as practicable in the course of litigation. However, it was not until after the Plaintiff overcame a motion to strike class allegations, a motion to dismiss the case claiming that the Plaintiff had not adequately pled vicarious liability, the litigation

of *twelve* discovery motions, the service of more than twenty third-party subpoenas, including with entities in a foreign country, production of more than 200,000 pages of documents from the defendants and third parties throughout the course of discovery, and a full day of mediation before an experienced mediator, with subsequent settlement discussions, that this proposed settlement was reached. The Settlement Agreement is attached as Exhibit 1.

Furthermore, the Agreement was achieved despite significant risk of no recovery for class members. During this Supreme Court term, there were two cases that, if *either* resolved in the favor of the Defendant, would have eliminated TCPA class actions altogether. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 578 U.S. ___, No. 13-1339 (May 16, 2016).

Under the Agreement, Interstate has agreed to pay four million and two hundred thousand dollars ($4,200,000.00) to establish a Settlement Fund. The Settlement Fund will be used to provide the exclusive recovery and relief for the Class, any reasonable attorneys' fees and costs approved and awarded by the Court to Plaintiff's Counsel, any incentive awards approved and awarded by the Court to Plaintiff, and the costs of notice and settlement administration. In this case, 72,811 persons submitted Claim Forms. That is nearly 10% of the class who received direct notice and, as attested by the Third Party Claims Administrator, is on the highest end of the standard claims rate for settlements of this kind. *See* Exhibit 2 –

<u>Affidavit of Christina Peters-Stasiewicz</u> at ¶¶18-19. In addition, the Court set March 24, 2016 as the date to submit exclusions or objections. Only two[1] individuals[2] have objected to the Agreement (less than 0.00000023% of the direct notice class members) and there have only been 20 requests for exclusion (less than 0.00002% of the direct notice class members).

As shown below, the Agreement easily meets the standards for final approval. In granting preliminary approval, the Court found that the Agreement is "in all respects fundamentally fair, reasonable, adequate, and in the best interests of the settling class members." [ECF No. 163, ¶8]. Nothing has changed to alter that conclusion.[3] The Agreement is the product of arm's length negotiations between Defendant and experienced Class Counsel, and was reached with the guidance of the Honorable Morton Denlow (Ret.), who is well-regarded as a skilled mediator.

---

[1] In a settlement of this magnitude, the Court should expect to receive around 20 objections to the Settlement (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

[2] As discussed below, the first objection relates to an exception taken by a class member with respect to the distribution of class member money to a *cy pres* beneficiary for uncashed claim checks. However, the objection is a result of a misapprehension of the Agreement, which actually employs the exact process the objector suggests (continuing to distribute money to Settlement Class Members until it is no longer possible). The second objection is limited to the amount of attorneys' fees and incentive award, yet is devoid of any citation to Eleventh Circuit (or any other circuit's) authority. By contrast, the amount agreed to in the settlement, without objection from any other class member (including the sole other objector), is well-supported by Eleventh Circuit precedent in the Plaintiff's Motion for Attorneys' Fees and an Incentive Award. *See* ECF No. 168.

[3] In fact, neither of the two objections suggests that this settlement should not receive final approval.

As a result, the Agreement is presumptively fair, reasonable and adequate. *In re Sturm, Ruger & Co., Inc.*, No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.").

## **BACKGROUND**

### **A. Background and the Telephone Consumer Protection Act**

The TCPA prohibits, *inter alia*, initiating any telephone solicitation to a telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry ("DNC Registry"), or calling a cell phone using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. *See* 47 U.S.C. §§ 227 (b) and (c). The DNC Registry portion of the TCPA's regulations, under 47 C.F.R. § 64.1200(c)(2), prohibits "initiat[ing] any telephone solicitation … to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." A private right of action exists for such violations under 47 U.S.C. § 227(c)(5) for "residential telephone subscriber[s]" who have received more than one telemarketing call within any twelve-month period.

4

In her First Amended Complaint, Plaintiff alleges that Interstate violated the TCPA by causing multiple telemarketing calls to be made to phone numbers Plaintiff and others had registered with the DNC (Count I) and by making calls via an ATDS to cellular telephone numbers (Count II). Interstate denies that it violated the TCPA, and denies all other allegations of wrongdoing and liability. (*See* Agr. at Recitals ¶¶ C, F.)

**B. Plaintiff's Allegations[4]**

In her First Amended Complaint, and throughout the litigation, Plaintiff has alleged that she is one of many American cellular phone users pestered by automated and unsolicited telemarketing calls despite having registered her phone number on the DNC Registry. [*See* ECF No. 1 at ¶¶ 2-4]. Plaintiff alleged that she received, on her cellular telephone number which was listed on the DNC Registry, calls from All American Auto Protection, Inc. ("AAAP") in March of 2014 and US Direct Protect in June of 2014 and that those telemarketing calls promoted the goods and services of Interstate. [*See id.* at ¶¶ 42-59].

**C. Plaintiff's Discovery Efforts Identify Putative Class Members**

Discovery in this case was hard fought, with 12 discovery-related motions briefed over the life of the case. Plaintiff issued approximately 20 third-party subpoenas, designed to both identify class members and further develop her

---

[4] While the Defendants appearing in the action do not oppose the relief sought in this Motion, the Defendants have indicated that they do not concede the factual representations made by Plaintiff and reserve all rights if the settlement does not receive final approval.

theories of vicarious liability with respect to Interstate. Plaintiff also received more than 200,000 pages of documents from the defendants and third parties throughout the course of discovery.

In response to a subpoena sent to 0995316 B.C. Ltd, a company that allegedly leases the use of automated dialing equipment, Plaintiff obtained records apparently showing more than 3,000,000 attempted telephone calls by US Direct Protect, including contact made with Plaintiff after three attempted calls. Plaintiff retained an expert witness, Jeffrey A. Hansen of Hansen Legal Technologies, Inc. in California, who has served as an expert in TCPA cases for both plaintiffs and defendants. Mr. Hansen explained in his report that by reviewing more than 25 files (amounting to thousands of pages) of documents and evidence, including a database with calling activity, he could identify the class members called via an ATDS.

As to the ATDS Class,[5] Mr. Hansen's analysis identified 749,657 calls to 637,311 unique wireless numbers. As to the DNC Class,[6] Plaintiff's expert, Christina Peters-Stasiewicz, identified call recipients who had been registered on

---

[5] Defined as: All persons within the United States who were called on a cellular telephone line by or on behalf of Interstate National Dealer Services, between June 12, 2010, and January 28, 2016.

[6] Defined as: All persons within the United States who, between June 12, 2010, and January 28, 2016: (1) were called for telemarketing purposes more than once, within any twelve-month period, at such person's telephone number by or on behalf of Interstate; and (2) at the time of the calls, that telephone number was registered on the National Do Not Call Registry.

the DNC database for more than 30 days prior to the date of the first call who then received two or more calls within a 12-month period. Ms. Peters-Stasiewicz found 249,727 DNC class members. These two lists have been de-duplicated, resulting in a total of 822,197 class members between the two classes.

## ARGUMENT

### A. THE AGREEMENT IS THE RESULT OF ARM'S-LENGTH NEGOTIATION BETWEEN THE PARTIES WITH THE ASSISTANCE OF AN EXPERIENCED MEDIATOR.

"Courts often focus on whether the settlement resulted from 'arm's-length negotiations' between counsel possessed of 'experience and ability . . . necessary to effective representation of the class's interests.'" *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 U.S. Dist. LEXIS 121093, *29-30 (N.D. Ga. Oct. 20, 2008) *quoting Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (a court "can rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel'") .

Here, the Agreement only came about after protracted motion practice, significant discovery, and extensive settlement discussions, as outlined above. Ultimately, the Parties conducted an in-person mediation session by a highly experienced and well-respected neutral, Honorable Morton Denlow (Ret.) of

JAMS. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001)

("The fact that the entire mediation was conducted under the auspices of … a

highly experienced mediator, lends further support to the absence of collusion.").

Moreover, the Parties reached the settlement through experienced counsel, who

had at their disposal ample information about the case facts to evaluate the terms of

any proposed agreement, so as to reach a fair compromise. As such, it is clear the

Agreement is the result of arm's-length and informed negotiation between the

parties, not collusion. There are no factors standing in the way of approval.

### B.  CLASS MEMBERS HAVE BEEN PROVIDED SUFFICIENT NOTICE OF THE ACTION AND THE SETTLEMENT.

Rule 23 requires the court to direct to class members "the best notice that is

practicable under the circumstances" describing, among other things, the action,

the class certified, and class members' right to exclude themselves. Fed. R. Civ. P.

23(c)(2)(B). Further, before granting final approval to a proposed class settlement,

the court must "direct notice in a reasonable manner to all class members who

would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due

Process Clause also guarantees unnamed class members the right to notice of a

class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

In order to satisfy these requirements, notice of a class settlement must

"apprise class members of the terms of the settlement agreement in a manner that

allows class members to make their own determinations regarding whether the

settlement serves their interests." *In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1317 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S.247 (2010). Neither Rule 23 nor due process requires receipt of actual notice by all class members, *Jurvis v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012), and the Federal Judicial Center has suggested that a notice plan that reaches 70% of class members is reasonable.  Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf /$file/notcheck.pdf* (Last Visited on August 11, 2014). Further, in determining the sufficiency of class notice, courts "look solely to the language of the notices and the manner of their distribution."  *Alabama*, 271 F. App'x at 901. However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted).

Here, this Court approved the Notice Plan set forth in the Agreement, which called for both direct notice through U.S. mail and publication notice through the Internet. In approving the Notice Plan, this Court found that it "constitutes the best notice practicable under the circumstances . . . and satisfies fully the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law." [ECF No. 163; ¶ 9].

The Settlement Administrator and the Parties followed the Court-approved

Notice Plan, by:

- Preparing and delivering the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715(b) (the "CAFA Notice") to the Attorney General of the United States and the Attorneys General of each state and U.S. territory;
- Establishing and maintaining the settlement website, AutoWarrantyTCPA.com with online claims filing capability, the Website Notice, and relevant documents;
- Achieving direct mail notice on 91% of the Settlement Class Members;
- Completing the media notice directed by this Court, which was promised to include 63,000,000 impressions. However, without any increase to the budget, delivery of 71,240,825 impressions was achieved.

*See* Exhibit 2 at ¶¶ 3-4, 13-14. In short, not only did the notice provided to the

Settlement Classes comply with the Court-approved amended Notice Plan, Rule

23, and Due Process, it was also ultimately successful and surpassed the standard

suggested by the Federal Judicial Center.

## C. THE AGREEMENT SATISFIES EACH OF THE ELEVENTH CIRCUIT'S *BENNETT* FACTORS.

In addition to being the result of arm's-length negotiations, the Agreement

also satisfies each of the factors articulated in *Bennett v. Behring Corp.*, 737 F.2d

982, 986 (11th Cir. 1984), which are used to determine if the settlement is "fair,

reasonable, and adequate." *Id.* While the Eleventh Circuit instructs district courts

to consider the *Bennett* factors, "[i]n evaluating these considerations, the district

court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp. 2d

10

1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel." *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Agreement.

### 1. Likelihood of Success at Trial.

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012). Here, ultimate success at trial for Plaintiff and the Settlement Class Members is far from guaranteed. From the inception of the action, and throughout the period Plaintiff and her counsel invested their time and money prosecuting these claims, the parties have litigated this case in the shadow of uncertainty regarding the central legal question presented by this case—whether Interstate, who did not place telemarketing calls to Plaintiff or class members, had an agency relationship with its telemarketers, such that Interstate could be liable for alleged TCPA violations committed by those

11

telemarketers. Courts have been divided on the showing required to establish vicarious liability.[7]

Plaintiff's counsel was confident in the strength of the claims alleged in the Complaint and that Plaintiff would ultimately prevail at trial. Regardless, litigation is inherently unpredictable and the outcome of a trial is never guaranteed. Indeed, Plaintiff faced significant risk in taking this matter to trial, including the possibility that the case would be defeated in dispositive pre-trial motions practice, the Court would deny class certification, or that the result at trial would be in Interstate's favor. These undeniable risks included arguments relating to class ascertainability, typicality, individual questions of consent, and whether Interstate's telephone system was in fact an ATDS. *See Warnick v. Dish Network, LLC*, No. 1:12-cv-1952, ECF No. 259 (D. Colo. Oct. 30, 2014) (denying class certification with prejudice); *see also Jamison v First Credit Servs., Inc*., No. 1:12-cv-04415, ECF No. 120 (N.D. Ill. July 29, 2013) (denying the motion for reconsideration of class denial).

Furthermore, this case also faced risk on shifts in class action jurisprudence. During this Supreme Court term, there were two cases that, if *either* were resolved

---

[7] *Compare Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, 2011 WL 2837435, at *1-3 (N.D. Ill. July 18, 2011) (finding that TCPA liability does not require a party to make a call) *with Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (absence of "on behalf of" language in 47 U.S.C. § 227(b)—unlike Section 227(c)(5)—means the entity whose goods are advertised in a prerecorded message is not liable under the TCPA unless traditional vicarious liability principles are satisfied).

in favor of the Defendant, would have eliminated TCPA class actions altogether. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 578 U.S. ___, No. 13-1339 (May 16, 2016). In addition, TCPA claims are constantly under attack by defendants. Case law is rapidly evolving and, even now, there are various petitions pending before the FCC that could change the playing field overnight. During this litigation, there was a pending FCC petition to change the definition of an ATDS, which if adopted, may have eliminated that claim for Plaintiff.

In sum, "the proposed settlement provides that each eligible Settlement Class Member who files a valid Proof of Claim will receive, within a relatively short period of time following approval and final disposition of the case, a distribution from the Settlement Fund ... That certainty of recovery clearly outweighs Lead Plaintiffs' uncertain prospects of success through continued litigation. This factor therefore favors approval of the settlement." *Carpenters Health & Welfare Fund*, 2008 U.S. Dist. LEXIS 121093, at *34-35.

### 2. The Range of Recovery and the Point at Which the Agreement was Reached is Fair, Reasonable, and Adequate.

As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co*., 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007). However, "the Court's role is not to engage

in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figuero*a, 517 F. Supp. 2d at 1326.

The monetary relief secured on behalf of the Settlement Class is fair, adequate and reasonable for a TCPA settlement of this magnitude with these facts. Each non-excluded Class Member submitting a timely and valid claim will receive their pro rata share of the remaining Settlement Fund, after deducting any reasonable attorneys' fees and costs approved and awarded by the Court to Plaintiff's counsel, any incentive awards approved and awarded by the Court to the Plaintiff, and the costs of notice and settlement administration. The anticipated amount for each claiming Settlement Class Member is at least $31.00. *See* Exhibit 2 at ¶20. Moreover, the Agreement's terms are also fair, reasonable, and adequate when compared to other TCPA class settlements.[8] Because the Agreement is in the range of what is fair, adequate and reasonable for a TCPA settlement of this magnitude, examination of the second and third *Bennett* factors support approval.

---

[8] In fact, many courts have approved settlements providing a much lower per-class member benefit. *See. e.g., Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) ($9,750,000 to cover claims of over 1,400,000 class members); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving settlement of $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012); *Adams v. AllianceOne Receivables Mgmt.*, No. 08-cv-248 [ADD CITE] (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, see DE 109 at 10, 116 at 6, and 137); *In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at ECF No. 123, p. 1 (only injunctive relief for class) and ECF No. 124 (settlement granted final approval).

As Chief Judge Thrash held in approving another settlement, "after weighing the settlement amount against the risks and costs of continued litigation this Court finds that the settlement is well within the range of possible recoveries and should be approved." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000) (Thrash, J.) Here, the recovery for each class member is quite substantial when compared to the obstacles they faced.

### 3. The Complexity and Expense of Further Litigation.

The next factor is the complexity and expense of further litigation. In evaluating this factor, this Court is guided by "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986; *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001) (noting that application of the *Bennett* factors "often justifies approving settlements that are substantial compromises of the relief that could be obtained through litigation"; and approving settlement because it was "consistent with and in some respects exceed[ed] the relief that the class could expect to obtain at trial"). This factor favors approving the Agreement because the expense and complexity of further litigation would be substantial. It would require pretrial motion practice, including summary judgment and class certification, a final pretrial order and final pretrial conference, and conducting a trial. If the Court were to grant class certification or grant summary judgment in Defendant's favor

then, given the stakes, the losing side would likely seek relief from the Eleventh Circuit. All of the foregoing would have further extended the case and delayed the ability of the Settlement Classes to recover for years, if at all.

In either case, continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993). The settlement secures a substantial benefit for members of the Settlement Classes, undiminished by further litigation expenses and without the attendant delay, risk, and uncertainty of continued litigation.

### 4. Substance and Amount of Opposition to Agreement.

The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, out of more than 730,000 direct notices sent, only 19 class members requested exclusion, and just two objected. [*See* ECF No. 165 and 166]. The first *pro se* objection was made by Mr. Robert Balick, who took issue with the "*Cy Pres* disposition of the residual unpayable settlement funds." [*See* ECF No. 165]. Specifically, Mr. Balick states, "After the statutory time for all included, any unspent funds should be pro-rata re-divided equally among all Class Members who already have been rightfully compensated." [*Id.* (emphasis in original)]. However,

this mechanism suggested by Mr. Balick is *exactly what the Agreement already provides*:

> All payments issued to Settlement Class Members via check will state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) days after the date of issuance. **To the extent that any checks to Settlement Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those checks on a pro rata basis to Settlement Class Members who submitted an Approved Claim and who cashed their checks**, if doing so is administratively and economically feasible.

*See* Exhibit 1 at 18 (emphasis added). While Class Counsel appreciates Mr. Balick's position that settlement money be distributed to class members whenever possible, this is already what the Agreement accomplishes. Funds will be distributed to the *cy pres* beneficiary only if the amount of money to be redistributed to Settlement Class Members is less than what it would cost the settlement administrator to re-distribute that money. As such, this objection is just a misunderstanding of the Agreement and should be overruled.

The second *pro se* objection is from Mr. Gregory J. Sachnik, who states that the lawsuit "appears meritorious." [*See* ECF No. 166]. Despite this position, Mr. Sachnik objects to the amount of the attorneys' fees and the incentive award, suggesting that a 10% fee award would be reasonable. However, the Eleventh Circuit has found that the benchmark in common fund class settlements for attorney's fees is 30%. *See Camden I Condo. Ass'n*, 946 F.2d at 774. The

17

benchmark, however, is only that. The award may, and often does, exceed it. *Id.* at 774-775 (as a general rule, "an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirmed class attorneys' award of 33.3%). *See, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (referencing empirical studies showing that, "regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery[,]" and noting that "*[t]he average* percentage award in the Eleventh Circuit mirrors that of awards nationwide—*roughly one-third*") (emphasis added). Here, the Plaintiffs have requested this "average" percentage award of one-third, which they submit is justified given that this settlement appears to represent the highest TCPA settlement in the history of Georgia federal court.

Mr. Sachnik's objection also shows that he is not fully aware of the circumstances surrounding TCPA claims, based on his position that, "the literature available on-line suggests that these cases are subject to few defenses." *Id.* However, as detailed above and in the Plaintiff's Motion for an Award of Attorneys' Fees and an Incentive Award, TCPA cases are subject to a myriad of

18

defenses, and success is far from guaranteed.[9] Furthermore, the requested fee is

consistent with other fee awards in TCPA class settlements.[10]

The fact that there are only two *pro se* objections, considering the

comprehensive notice provided to the class, demonstrates that class members find

the Agreement reasonable and fair, which strongly favors the Agreement. *See*

*Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS

88347, at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant

number of objections that the majority of the Class found [the settlement

agreement] reasonable and fair."). The vast disparity between the number of

potential class members who received notice of the settlement and the number of

objectors creates a strong presumption that this factor weighs in favor of the

settlement. In fact, Judge Hunt illuminated the discrepancy between the amount of

---

[9] To say nothing of the fact that two cases before the Supreme Court this term could have ended TCPA class actions, as discussed above.

[10] *Charvat v. AEP Energy, Inc.*, Civil Action No. 13-cv-00662 (N.D. Ill. Jan. 16, 2015) (Zagel, J.) (Dkt. No. 44) (awarding one-third of the total common fund); *Jay Clogg Realty Group, Inc. v. Burger King Corporation*, Civil Action No. 13-cv-00662, (D. Md. April 15, 2015) (same); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, Civil Action No. 11-CV-02467 (D. Md. Oct. 28, 2014) (same);*Gehrich v. Chase Bank, USA, N.A.*, No. 1:12-cv-05510 (N.D. Ill. Aug. 12, 2014) (preliminarily approving attorneys' fees and costs up to $11,000,000 (Feinerman, J.) (Dkt. No. 117) (one-third of the Settlement Fund after subtracting the Dedicated Cy Pres Distribution); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc*., No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses).

objectors in this settlement and the typical case in *Carpenters Health & Welfare Fund*:

> From the over 776,400 Notices sent to Settlement Class Members, only 352 timely requests for exclusion have been submitted… The extremely small number of requests for exclusion that have been submitted demonstrates that the vast majority of Settlement Class Members support the settlement. Moreover, there has only been 14 timely objections to the proposed settlement filed with the Court. Only about 12 of the objectors have contested the benefits received by the Settlement Class as a result of the settlement. Accordingly, the response of absent Settlement Class Members also strongly supports approval of the settlement.

2008 U.S. Dist. LEXIS 121093, at *44-45. With a nearly identical amount of direct notices sent in *Carpenters Health & Welfare Fund*, Judge Hunt found that 352 exclusion requests (compared to 19 here) and 14 objections (compared to two here) indicated that the "response of absent Settlement Class Members also strongly supports approval of the settlement." *Id.*

Moreover, while notice of the Settlement was sent to the U.S. Attorney General and the Attorneys General of all 50 states, none have voiced any opposition to the terms of the Agreement. *See* Exhibit 2 at ¶ 3. This lack of governmental opposition to the Agreement likewise militates in favor of its approval. *See Fresco v. Auto. Directions, Inc.*, 2009 WL 9054828 *5 (S.D. Fla. Jan. 20, 2009) (noting, in addressing this *Bennett* factor and approving settlement, that "no state or federal government officials have filed objections"). In all, the reaction of the Settlement Class Members has been overwhelmingly supportive of

the settlement. Accordingly, the substance and amount of opposition to the settlement is miniscule in comparison to the support behind it, and thus weighs in favor of final approval.

### 5. Stage of Proceedings at which Settlement Achieved.

The final Bennett factor looks to the stage of proceedings at which the settlement was achieved. This factor is used to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation. *See Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action.").

Here, the Agreement was not reached until after multiple Rule 12 motions, substantial discovery, full briefing on a dozen discovery motions, receipt of significant discovery including multiple requests for production of documents, interrogatories, a litany of third party subpoenas, and a full day of mediation, followed by significant follow-up negotiation that continued to involve the mediator. In fact, the only stages left in the litigation were summary judgment, class certification briefing, and potentially trial. Class Counsel ensured they had sufficient information about the allegations of the complaint, the size of the

21

Settlement Classes, and the range of the Settlement Classes' potential damages.

Hence, Class Counsel had "an excellent idea of the merits of [their] case . . . [and

were] able to form an 'adequate appreciation of the merits of the case before

negotiating.'" *Carpenters Health & Welfare Fund*, 2008 U.S. Dist. LEXIS 121093,

at *42 (*quoting In re Cendant Corp. Litig.*, 264 F.3d 201, 236 (3d Cir. 2001)). The

stage of proceedings factor thus weighs in favor of approval as well.

### D. THE ATTORNEYS' FEES AND INCENTIVE AWARD REQUESTED FROM THE SETTLEMENT FUND ARE REASONABLE.

In the Eleventh Circuit, "it is well established that when a representative

party has conferred a substantial benefit upon a class, counsel is entitled to an

allowance of attorneys' fees based upon the benefit obtained." *Camden I Condo

Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980). The lone objector that mentioned attorneys' fees and the

incentive award claimed that the agreed upon fee was too high based on mere

speculation, despite labeling the lawsuit as "meritorious." This is not a basis for

questioning the proposed cost and fee amount. *See*, *e.g.*, *Sabol v. Hydroxatone

LLC*, No. 11-cv-4586, 2013 U.S. Dist. LEXIS 166520 at *20, fn. 5 (D. N.J. Nov.

22, 2013) (rejecting "generic" objections to the proposed cost and fee award).

Like the agreement on the relief to be provided to the class, the parties'

subsequent agreement on the cost and attorney fee award that Plaintiff may seek

from the Court stems from the mediation with Judge Denlow. While it is within the Court's discretion to determine the reasonableness of the proposed award, allowing parties to negotiate cost and attorney fee awards in class action settlements is strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.").

The amount of the agreed upon attorneys' fees and incentive award are discussed in more detail in the Plaintiff's Motion for an Award of Attorney's Fees and an Incentive Award. [*See* ECF No. 168].

## CONCLUSION

This Agreement provides significant and immediate benefits for the Settlement Classes. It is the result of arm's length, informed negotiations with the assistance of an experienced mediator, and it satisfies each of the six *Bennett* factors. The Agreement is thus fair, reasonable, and adequate under Rule 23. Plaintiff respectfully requests that this Court enter an order granting the Agreement final approval. A draft Final Approval Order is attached as Exhibit 3.

## **Certification of Compliance with LR 5.1B**

The undersigned certifies that this brief was prepared in compliance with the

font and point selections approved by the Court on LR 5.1B.

Respectfully submitted,

_____
/s/*Anthony I. Paronich*
EDWARD A. BRODERICK
ANTHONY PARONICH
Broderick Law, P.C.
99 High Street, Suite 304
Boston, MA 02110
(617) 738-7080 Telephone
ted@broderick-law.com
anthony@broderick-law.com

Steven H. Koval
Attorney for Plaintiff
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA 30305
Telephone: (404) 513-6651
Steve@KovalFirm.com


MATTHEW P. MCCUE
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415 Telephone
(508) 319-3077 Facsimile
mccue@massattorneys.net

*Attorneys for Plaintiff*


Dated: May 24, 2016

## Certificate of Service

I, Anthony I. Paronich, hereby certify that on May 24, 2016 I caused the foregoing to be filed through the Court's ECF system.

/s/*Anthony I. Paronich*